**Frederick M. STIESBERG, Jr., Plaintiff–Appellant,**

v.

**STATE OF CALIFORNIA; California Highway Patrol; Maurice J. Hannigan, individually and as Commissioner of the California Highway Patrol; Dwight Helmick, individually and as Deputy Commissioner of the California Highway Patrol; Ken Anderson, individually and as Assistant Commissioner of the California Highway Patrol, Defendants–Appellees.**

No. 94–15875.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 16, 1995.

Decided March 29, 1996.

---

Joe R. McCray and Roberta D. Perkins, San Francisco, California, for plaintiff-appellant.

Andrew M. Wolfe, Nielsen, Merksamer, Parrinello, Mueller & Naylor, Mill Valley, California, for defendants-appellees.

Before: WALLACE and LEAVY, Circuit Judges, and BAIRD,* District Judge.

LEAVY, Circuit Judge:

A police officer appeals from the district court's dismissal of his civil rights action against the officer's employer and various superior officers, arguing that the district court erred by concluding that his transfer from one post to another without any effect on his rank, pay, or privileges did not violate

---

* The Honorable Lourdes G. Baird, United States District Judge for the Central District of California, sitting by designation.

1. Shortly thereafter, two CHP officers named John Flagg and Joseph Sharp jointly filed a similar action in federal district court against the same defendants. The district court ordered the two cases consolidated in December 1992, and all of the appellees' subsequent motions were

any federally protected liberty or property interests. For the reasons which follow, we affirm.

## FACTS AND PRIOR PROCEEDINGS

Frederick M. Stiesberg, Jr. ("Stiesberg"), a captain in the California Highway Patrol ("CHP"), returned from vacation in July 1991 to find that he had been transferred from his position as Commander of the CHP's North Sacramento Area to that of Commander of the CHP's Air Operations Division. Although the new posting involved a lateral transfer with no adverse effect on his rank, pay, or privileges, Stiesberg believed that the change was intended to be punitive because, over the previous nineteen months, CHP officers under his command had issued several traffic citations to two daughters of the CHP's highest ranking official, Commissioner Maurice Hannigan, Jr. ("Hannigan").

On June 29, 1992, Stiesberg filed the instant civil rights action with state law claims in federal district court, naming as defendants the State of California, CHP, Hannigan, and two of Hannigan's subordinates (collectively, "appellees").[1] The gist of Stiesberg's complaint was that the appellees had pressured him to change a traffic report, verbally abused him, investigated his conduct, and then transferred him without prior notice. After the district court had dismissed several of his claims, Stiesberg filed a First Amended Complaint on April 23, 1993, alleging that the appellees had deprived him of state and federally protected liberty and property interests without due process of law.

On July 27, 1993, the appellees moved to dismiss the First Amended Complaint. Two months later, the district court granted the motion in favor of defendants State of California and CHP on all state and federal claims;[2] dismissed the section 1983 claims

---

directed against not only Stiesberg but Flagg and Sharp as well. Neither Flagg nor Sharp is a party to this appeal.

2. More specifically, the district court dismissed the federal civil rights claims, asserted under 42 U.S.C. § 1983, against the State of California and CHP pursuant to Fed.R.Civ.P. 12(b)(6), and declined to exercise supplemental jurisdiction

against the remaining individual defendants on the ground that Stiesberg's transfer did not violate any substantive liberty or property interests; and dismissed one of Stiesberg's state law claims as well. As for the remaining state law claims, the district court converted the dismissal motion to one for summary judgment because the appellees had included supporting evidence that was outside the pleadings, and granted Stiesberg additional time to submit countervailing evidence. Rather than subject his remaining claims to summary judgment, Stiesberg sought and obtained dismissal without prejudice of his state law claims under Fed. R.Civ.P. 41(a)(2). The district court then entered judgment in favor of the appellees and dismissed Stiesberg's action. Stiesberg has timely appealed.

## ANALYSIS

### Standard of Review

■ "We review de novo a dismissal for failure to state a claim pursuant to Fed. R.Civ.P. 12(b)(6). All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Total TV v. Palmer Communications, Inc.,* 69 F.3d 298, 301 (9th Cir.1995) (internal citation omitted), *cert. dismissed,* —— U.S. ——, 116 S.Ct. 1459, 134 L.Ed.2d 576 (1996).

### Discussion

#### I. Federal Claims

■ The district court concluded that, in order for Stiesberg to prevail on his federal claims, he had to allege and show that the actions complained of ran afoul of state-created liberty or property interests that were subject to federal due process protection. In rejecting Stiesberg's civil rights claims, the court held that it was not enough for him to allege that the individual defendants failed to give proper notice before transferring him, because the mere failure of a public employer to comply with some procedural dictate could not, without more, give rise to any interest subject to federal cognizance. We agree.

■ Nearly all reported decisions dealing with section 1983 in the context of disciplinary proceedings against public employees arise out of *discharges* from public employment, and not mere disciplinary actions. *See, e.g., Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Moulton v. City of Beaumont,* 991 F.2d 227 (5th Cir. 1993); *Melton v. City of Oklahoma City,* 928 F.2d 920 (10th Cir.) (en banc), *cert. denied,* 502 U.S. 906, 112 S.Ct. 296, 297, 116 L.Ed.2d 241 (1991); *Brown v. Georgia Dep't of Revenue,* 881 F.2d 1018 (11th Cir.1989); *Bennett v. City of Boston,* 869 F.2d 19 (1st Cir.1989). However, even if Stiesberg's transfer can fairly be viewed as a disciplinary action—a questionable proposition at best, in light of the fact that it had no adverse effect on his rank, pay, or privileges—we reject the proposition that merely transferring an employee without prior notice gives rise to a due process claim.

A threshold requirement to a substantive or procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution. A protected property interest is present where an individual has a reasonable expectation of entitlement deriving from existing rules or understandings that stem from an independent source such as state law. A reasonable expectation of entitlement is determined largely by the language of the statute and the extent to which the entitlement is couched in mandatory terms. Although procedural requirements ordinarily do not transform a unilateral expectation into a protected property interest, such an interest is created if the procedural requirements are intended to be a significant substantive restriction on ... decision making.

*Wedges/Ledges of Cal., Inc. v. City of Phoenix,* 24 F.3d 56, 62 (9th Cir.1994) (internal citations and quotations omitted).

■ Stiesberg argues that the Public Safety Officers Procedural Bill of Rights Act, Cal. Gov't Code §§ 3301–3310 (the "Act"), creates substantive rights that prohibit punitive

---

over the remaining state law claims against those two defendants. *See* 28 U.S.C. § 1367(c)(4).

Stiesberg does not challenge that ruling on appeal.

transfer without an opportunity for an administrative hearing. Section 3304(b) states that "[n]o punitive action ... shall be undertaken by any public agency without providing the public safety officer with an opportunity for administrative appeal." Section 3303 defines "punitive action" to include a "transfer for purposes of punishment," which Stiesberg has alleged.

Even assuming that Stiesberg's transfer constituted "punitive action," *see McManigal v. City of Seal Beach*, 166 Cal.App.3d 975, 212 Cal.Rptr. 733, 734–35 (1985) (discussing when detrimental transfer to another job is "punitive"), he cannot show that the Act does anything more than create procedural guarantees or that it limited the State's authority to transfer an officer. *See Wedges/Ledges*, 24 F.3d at 62 (requiring "significant substantive restriction" on decision making to show state law procedures create property interest); *see also Sanchez v. City of Santa Ana*, 915 F.2d 424, 429 (9th Cir.1990) (finding constitutionally protected property interest in merit pay where city grievance procedure "implicitly restricted the City's authority to demote an employee"), *cert. denied*, 502 U.S. 815, 112 S.Ct. 66, 116 L.Ed.2d 41 (1991). The Act merely provides procedural safeguards that should apply when such a transfer constitutes punishment. Thus, Stiesberg cannot establish that he was deprived of a property interest protected by the Due Process Clause.

Stiesberg also contends that he was deprived of a constitutionally protected liberty interest because the appellees damaged his reputation by accusing him of lying and incompetence. "An individual has a liberty interest in employment protected by the Due Process Clause if the [personnel action] is for reasons that might seriously damage his standing in the community, or if [it] effectively precludes future work in the individual's chosen profession." *Merritt v. Mackey*, 827 F.2d 1368, 1373 (9th Cir.1987) (internal quotation and citation omitted). Although Stiesberg contends that he was verbally abused and called incompetent, his transfer and the verbal assaults "were not sufficiently serious to stigmatize him." *Id.; see also Haight v. City of San Diego*, 228 Cal.App.3d

413, 278 Cal.Rptr. 334, 337 (1991) ("It is well established [that] a person's protected interests are not infringed merely by defamatory statements, for an interest in reputation alone is not a constitutionally protected liberty interest. Rather, the liberty interest is infringed only when the defamation is made in connection with the loss of a government benefit, such as, employment.") (internal quotations and citations omitted).

While the precise question raised by this appeal—whether Stiesberg has a constitutionally protected property or liberty interest in a particular position at CHP—is one of first impression in this circuit, a case from the Seventh Circuit is illustrative. In *Altman v. Hurst*, 734 F.2d 1240 (7th Cir.) (per curiam), *cert. denied*, 469 U.S. 982, 105 S.Ct. 385, 83 L.Ed.2d 320 (1984), a police sergeant brought a section 1983 action against his chief of police, claiming that he had been wrongfully transferred to another post and subjected to on-the-job harassment, including denial of overtime and rescheduling of vacation time. The district court dismissed the action under Fed.R.Civ.P. 12(b)(6), and the sergeant appealed. In affirming the dismissal, the Seventh Circuit noted that, even if the individual defendant's conduct had been intended to be disciplinary and amounted to the sergeant's constructive demotion, no liberty or property interests were implicated. 734 F.2d at 1242–43. *See also Morrash v. Strobel*, 842 F.2d 64, 68–69 (4th Cir.1987) (no liberty interests implicated by police officers' disciplinary transfers; citing *Altman*).

We find the Seventh Circuit's analysis in *Altman v. Hurst* to be persuasive. In the absence of any allegation or showing that he had a right not to be transferred or subjected to petty annoyances on the job, and/or that the conduct complained of amounted to a constructive demotion or discharge, Stiesberg's contention that the appellees failed to comply with the requisite administrative steps prior to transferring him amounts to little more than a complaint that his unilateral expectations were not met. *See Wedges/Ledges of Cal., Inc.*, 24 F.3d at 62. Such a unilateral expectation, without more, does not involve any federally cognizable liberty or property interest. Accordingly, the dis-

trict court did not err by dismissing these section 1983 claims.

## II. State Law Claim

■ In his original complaint, Stiesberg asserted as his Fifth Cause of Action a claim of "Violation of Public Policy". The gist of Stiesberg's argument was that, by conspiring to prevent him from performing his duty of equally applying and enforcing the traffic laws against all individuals, the defendants had violated "the fundamental public policy of this State that a law enforcement officer will not be harassed, disciplined, terminated, demoted or otherwise retaliated against for performing his or her duties as a law enforcement officer[.]" The district court rejected this public policy argument and dismissed the claim under Fed.R.Civ.P. 12(b)(6).

In his First Amended Complaint, Stiesberg asserted a Fourth Cause of Action alleging a violation of California Labor Code § 1102.5 and public policy. The district court dismissed this claim under Fed. R.Civ.P. 12(b)(6) as well, noting that Cal. Lab.Code § 1102.5 was not yet applicable to state agencies. On appeal, Stiesberg concedes, as he must, that the district court did not err by rejecting his claim on the ground that the statute was not applicable; instead, Stiesberg insists that California had a long-standing common law public policy that was "encompassed within and codified by the provisions of Labor Code § 1102.5[,]" and the district court therefore erred by failing to rule on the merits of his public policy claim.

If we accept at face value Stiesberg's contention that the parameters of this particular common law public policy are fully "encompassed within" section 1102.5, we must turn to the wording of that statute to determine just what kind of misconduct is governed by that law. Section 1102.5 states, in relevant part, that "No employer shall retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or violation or noncompliance with a state or federal regulation." Cal. Lab.Code § 1102.5(b).

This is a whistleblower statute, pure and simple, and is designed to protect an employee from being persecuted by his employer for reporting to government officials what the employee reasonably believes to be some form of illegal conduct. Nothing in Stiesberg's First Amended Complaint brings him within the confines of this statute, however, for *he* reported no illegal conduct to anyone. Indeed, the only reports of illegal conduct involved in this case were the traffic citations issued by Stiesberg's officers to Hannigan's daughters.

This interpretation is reinforced by a reading of relevant California decisions. In *Garcia v. Rockwell Int'l Corp.*, 187 Cal.App.3d 1556, 232 Cal.Rptr. 490 (1986) (as modified), for example, the court held that "There is no question public policy forbids retaliatory action taken by an employer against an employee *who discloses information* regarding an employer's violation of law to a government agency." *Id.*, 232 Cal.Rptr. at 493 (relying on and discussing *Tameny v. Atlantic Richfield Co.*, 27 Cal.3d 167, 164 Cal.Rptr. 839, 610 P.2d 1330 (1980) and *Petermann v. International Bhd. of Teamsters*, 174 Cal. App.2d 184, 344 P.2d 25 (1959)) (emphasis added).[3]

Because we find no merit to any of Stiesberg's remaining arguments, the decision of the district court is

AFFIRMED.

---

3. *Garcia, Tameny* and *Petermann* stand for the proposition that California's fundamental public policy doctrine is to be broadly construed and not limited by legislative enactments. A recent decision of the California Supreme Court has narrowed this broad reading to the confines of constitutional and/or statutory provisions. *See Gantt v. Sentry Ins.*, 1 Cal.4th 1083, 4 Cal. Rptr.2d 874, 880–82, 824 P.2d 680, 686–88 (1992).